### ROLAND P. POLLARD v. JOB BATES.

#### *Evidence.*

In trover for a yoke of oxen, the plaintiff claimed title as conditional vendor thereof to one H., who sold them to the defendant. The defendant claimed that said sale to H. was absolute. After his sale to the defendant, H. failed, owing the plaintiff a small sum besides the debt for said oxen. Many of the creditors of H. brought suit and attached his property, which the plaintiff knew, but he did not commence suit. *Held,* that, as tending to show the plaintiff then supposed he had a lien on said oxen for the payment of the price at which he sold them to H., and that his conduct then was consistent with his claim on trial, it was competent for him to testify that he forbore to sue, because he had such lien, and had rather run the risk of losing his other claim than to be at the trouble and expense of a suit.

The defendant introduced a composition deed, which never became operative, signed by the plaintiff, and other creditors of said H., after the sale of said oxen to the defendant as aforesaid, and claimed that it tended to show that the plaintiff had no lien on said oxen, else he would not have signed it. *Held,* that, to rebut such inference, the plaintiff might show that at the time he signed said deed, he said he had a claim on said oxen for $225—the price he sold them at—that he looked to the defendant for the oxen—and that it was understood that said deed did not include his claim for them.

TROVER for a pair of oxen. Plea, the general issue, and trial by jury, December term, 1872, BARRETT, J. presiding.

The plaintiff testified, in substance, that in the year 1867, he sold a pair of young oxen, or steers, to one Ethan A. Hall, towards which he had received, in deal between them, some portion of the pay, but there was still an unpaid balance when, in the fall of 1868, said Hall applied to him for another pair of oxen, saying that he could not pay down for them, but wanted a credit, but that the oxen should remain the property of the plaintiff until they were paid for ; that the plaintiff informed him he had not at that time such oxen, but was soon going to Plymouth, and thought he could get him a pair, and if he could, he would, and if they could agree about the price, he would let said Hall have them on the condition named ; that in a few days the plaintiff went to Plymouth, and purchased a pair of oxen and drove them to said Hall's place, when the same were examined by said Hall, and the price agreed upon at $225 ; that there was at this time something said about Hall's giving a note for them, but the plaintiff said it was towards night, and he was tired and hungry and wished to go directly home, some two miles distant, at North Chester, and he would make a note such as he was accustomed to take in such cases, containing the agreement for the lien, and when Hall came that way, he might sign it ; that no note or other writing was ever given ; that in the spring of 1869, Hall sold and delivered said oxen to the defendant ; that the next June the defendant asked the plaintiff if he had a lien on the oxen, saying he had heard he had, and the plaintiff informed him he had—that they were his until paid for—that if Hall paid him for the same, well and good, otherwise, he should look to the defendant for the oxen, or the pay therefor ; that the next July, the defendant inquired of the plaintiff if Hall had paid him for the oxen, and the plaintiff informed him that he had not, and a conversation similar to the foregoing was repeated between them. There was no proof as to the trade between Hall and the defendant, or that the defendant had paid Hall any thing towards the oxen. The defendant sold the oxen in March, 1870, and they were driven to market. The plaintiff also testified to the value of the oxen. The defendant was not in court, nor did he testify in the case.

Hall testified that he never made any contract with the plaintiff that the oxen should be his until paid for ; but made an absolute and unconditional purchase of the oxen, and was to pay for them just when he pleased, even at the end of twenty years ; that the only contract pertaining to the oxen, was when the plaintiff delivered them to Hall. The defendant introduced three witnesses who testified that they were present at the delivery, and

there was nothing said about the plaintiff's having any lien upon the oxen for his pay.

Hall failed in February, 1870, and proved to be unable to pay his debts. Many suits were commenced, and attachments made of his property, which was known to the plaintiff. The plaintiff's counsel inquired of the plaintiff why he did not bring a suit and attach property with other creditors, which question was objected to by the defendant's counsel, but was admitted by the court ; to which the defendant excepted. The plaintiff replied that Hall was owing him only for the balance due him for the first pair of oxen, or steers, except what was secured by his lien on the oxen in the hands of the defendant, and he and Hall had never settled, and he preferred to run his chance in getting his pay, to bringing a suit for it. Hall appeared on the trial, acting in the manner of the real defendant, and it was claimed by the plaintiff that he. was the real defendant, which was not denied by the other side.

The defendant introduced a composition deed, with the signature of the plaintiff, one of the creditors, with others, thereon, which deed was never acted upon, on account of some misunderstanding among the parties with reference to it, and claimed that it had a tendency to show that the plaintiff had no lien on these oxen, or he would not have signed it. Said Hall testified that, aside from the oxen in question, there was a balance of about $20 due him from the plaintiff on their other matters of trade and deal. The plaintiff, in rebutting, then offered to show by one Spaulding, the trustee under the deed, who was instrumental in getting signatures of creditors thereto, that when the plaintiff signed the instrument, he said he had a lien on a pair of oxen for $225, and that Hall owed him only the balance that was due him —that he looked to Bates for the oxen—that his claim against Hall did not include the oxen. This the defendant objected to, but the court overruled the objection, and admitted the testimony ; to which the defendant excepted. The only question of fact made to the jury, was whether the plaintiff did retain a lien on the oxen as he swore he did. There were no exceptions to the charge of the court.

*Geo. L. Fletcher* and *Norman Paul*, for the defendant.

The court below erred in admitting the testimony of Spaulding to declarations of Pollard. There is no rule of law that will admit such testimony. *Worden* v. *Powers*, 37 Vt. 619 ; 1 Greenl. Ev. §108, and note. It was the sayings of the party to

contradict and vary the terms of the composition deed, an instrument in writing, under seal.

It was not admissible as a part of the *res gestœ*. It in no way has relation to any act or declaration of Pollard at the time of the contract of sale of the oxen to Hall ; neither was it in the presence of the defendant, or of Hall, or of the witness. It is inadmissible, because it is the sayings of the party out of court, and cannot be given in his own favor, and is not contemporaneous with the main fact or transaction in issue. It is a well established rule of law, that sayings of a witness out of court, are not admissible to corroborate his testimony, but are admissible to impeach him. If a declaration has its force by itself, as an abstract statement depending for its effect on the person making it, it is not admissible—it is only hearsay. *Worden* v. *Powers*, 37 Vt. 619 ; *State* v. *Davidson*, 30 Vt. 377 ; 1 Greenl. Ev. §108, and notes on pp. 148, 149, 150, 151 ; *Munson* v. *Hastings*, 12 Vt. 346 ; 2 Phill. Ev. 767 ; *Ellis* v. *Howard et als.* 17 Vt. 330 ; *Ogden* v. *Peters et al.* 15 Barb. 560 ; *Ellicott* v. *Pearl*, 10 Peters, 412 ; *Conrad* v. *Griffey*, 11 Howard, 480 ; *Queen* v. *Hepburn*, 2 Peters C. Rep. 496 ; *Robe et al.* v. *Hockley*, 12 Wend. 49 ; *Elkins* v. *Hamilton*, 20 Vt. 627 ; *Upham & Clay* v. *Wheelock*, 36 Vt. 27 ; *Haines & Kellogg* v. *Soule*, 14 Vt. 99 ; *Carpenter* v. *Hollister et al.* 13 Vt. 552.

It was error to admit the testimony of the plaintiff as to his reasons for not commencing suit against Hall. It is a narration of the witness's own private thoughts, never expressed in the hearing of any one. Yet such testimony was given to the jury, to obtain a verdict. If a party's own declarations are excluded, much more should a party's thoughts and unexpressed reasons be excluded.

There was no objection to the composition deed, and it was the duty of the court to give the jury its legal construction. Parol evidence was not admissible to explain, add to, or vary, its meaning. There is no ambiguity in it. If it was not admissible, on objection it should have been rejected ; but, when admitted, the defendant had a right to a legal construction of it by the court, and its effect as evidence before the jury. It was not subject to

the testimony given by Spaulding, or Pollard, to show its terms, nor to what Pollard's reasons were for signing, nor what amount he intended should be included of his and Hall's dealings.

*J. Converse* and *W. E. Johnson*, for the plaintiff.

To sustain the testimony of Hall, a composition deed was introduced by him, upon which the plaintiff's name appeared. " *The defendant claimed that this had a tendency to show that the plaintiff had no lien on those oxen, or he would not have signed the deed.*" If such was the character of that paper, was it not proper for the plaintiff to rebut that presumption ? If so, could there be any thing more legitimate, direct, and proper, than the declarations of the plaintiff at the time he signed the paper ? Can there be any objection to proving those declarations by a disinterested third person, and especially by one who was to carry into effect the paper as a trustee, and who would be likely to notice carefully and remember correctly what the plaintiff said at the time ?

Objection was made to the question propounded to the plaintiff, why he did not bring suit and secure his debt with other creditors, by attachment. The attachments of many creditors, and that known to the plaintiff, and his neglect to sue, might be used as an argument in favor of Hall's testimony, that the purchase was an absolute one, to be paid for " *just when he pleased, even at the end of twenty years.*" Can there be a doubt that such presumption may be rebutted by proper testimony ? If so, then clearly, the plaintiff was a competent witness for that purpose. No matter how, or by what means, the above facts got into the case ; testimony showing the conduct of the plaintiff, and the object and motive of such conduct with reference thereto, is proper. If the facts could not operate to the prejudice of the defendant, neither could the explanation, nor could both together.

The opinion of the court was delivered by

Ross, J. The question in controversy was, whether the plaintiff retained a lien on a certain pair of oxen when he sold them to Ethan A. Hall, which oxen Hall had sold to the defendant, and

for the conversion of which by the defendant the plaintiff brought this suit. The plaintiff claimed and testified that, by the agreement between him and Hall at the time he sold Hall the oxen, the oxen were to remain his property till Hall paid him for them. Hall claimed and testified that his purchase of the oxen was absolute and unconditional, and that he was to have twenty years to pay for them if he desired. We think on this issue, it was permissible to allow the plaintiff to show that his acts had been consistent with what he claimed the trade was. When, therefore, it turned out in evidence that Hall had failed, and others had brought suits against him, and that these facts were known to the plaintiff, he could properly be allowed to testify that he did not bring a suit against him, for the reason that he held a claim on the oxen for the payment of the price at which he sold them to Hall, and, besides the debt for the oxen, Hall owed him but a small sum, which he rather run the risk of losing than be at the trouble and expense of a suit. His neglect to sue, having knowledge of the failure of Hall, and of suits brought by Hall's other creditors, was an act of the plaintiff, which tended to show he then understood he had a claim on the oxen to secure the payment of the price at which he sold them, and, as such, the plaintiff had a right to have the jury know that he knew of the suits by Hall's other creditors, but did not sue himself, for the reason he had a lien upon the oxen.

The defendant introduced a composition deed, signed by the plaintiff, with other creditors of Hall. Although the deed never became operative, the fact that the plaintiff signed it, unexplained, would have a tendency to show that the plaintiff did not retain a lien on the oxen for their payment. We think, to rebut the tendency of this act, the plaintiff might show by himself and Spaulding, the trustee in the composition deed, that he did not sign the deed with reference to the debt due him for these oxen, but with reference to the small amount due him from Hall aside from these oxen, and that it was understood between him and Spaulding that the debt for these oxen, and his lien on them, should not be included within the operation of the composition deed. The deed was not in issue between the parties, but the plaintiff's signature

to it was shown as an act inconsistent with the claim the plaintiff was then making. The plaintiff and Spaulding were allowed to testify as to what debt due the plaintiff it was understood between them at the time the plaintiff signed that the deed was to be operative upon; not to add to, take from, contradict, or vary the language of the deed, but to explain the plaintiff's act of signing the deed, which was relied upon by the defendant as inconsistent with the claim the plaintiff was attempting to assert by the suit. As explanatory of the plaintiff's act, the question is not what is the legal effect of the language used in the deed, but what rights belonging to him did the plaintiff understand were to be affected by his signature of the deed, at the time he signed it. To show what rights he supposed he was signing away, he had a right himself to testify, and to call Spaulding to testify, as to what was said between them in regard to the effect of the deed upon his rights at the time he placed his signature to the deed.

Judgment affirmed.